■ WATERSIDE PLAZA, LLC, Appellant, v MARY SMITH et al., Respondents, et al., Defendants. [785 NYS2d 419]—

Judgment, Supreme Court, New York County (Leland DeGrasse, J.), entered on or about September 10, 2003, which, pursuant to an order, same court and Justice, entered on or about June 18, 2003, granting defendants' motion for summary judgment, declared that plaintiff waived its right to maintain this action seeking, inter alia, rescission of a lease and recovery of the leased premises, by entering into a one-year renewal

lease with defendant Mary Smith during the pendency of this action, and, upon that determination, dismissed the complaint without prejudice, unanimously reversed, on the law, without costs, the judgment vacated, defendants' motion for summary judgment denied, the complaint reinstated, and, on a search of the record, plaintiff granted partial summary judgment declaring that plaintiff did not waive its right to maintain this action by entering into a contractually required one-year renewal lease with defendant Mary Smith during the pendency of this action.

Plaintiff landlord is the owner of 30 Waterside Plaza, a building within a Manhattan residential apartment complex that was formerly regulated under the Mitchell-Lama program (Private Housing Finance Law art II). In 2001, pursuant to a settlement agreement, dated July 26, 2001 (the Settlement Agreement), which resolved certain litigation and administrative proceedings between ownership interests and the Waterside Tenants Association (*see Davis v Waterside Housing Co.*, 274 AD2d 318 [2000], *lv denied* 95 NY2d 770 [2000]), the complex was converted from the Mitchell-Lama program to fair market housing. Under the Settlement Agreement (which was approved by New York County Supreme Court and by state and city housing authorities), any tenant who agreed to be bound by the Settlement Agreement's terms was entitled to be offered, as a "Settling Tenant," the opportunity to execute a new one-year lease incorporating by reference the terms of the Settlement Agreement. The Settlement Agreement provides that a Settling Tenant's lease is "deemed automatically renewed without further notice or further writing . . . for successive one-year terms, during [the] Settling Tenant's lifetime," and specifies the manner in which the rent payable during each successive one-year term is to be calculated. In addition, the Settlement Agreement requires a Settling Tenant to use the apartment as his or her "primary residence."

Paragraph 8 of the Settlement Agreement, which provides for automatic renewal of a Settling Tenant's lease, provides in pertinent part as follows: "8. Pursuant to this Agreement, the Lease for each Settling Tenant shall be deemed automatically renewed without further notice or further writing (other than the rent bill reflecting the increased rent under the Agreement), for successive one year terms, during said Settling Tenant's lifetime, pursuant and subject to the terms and conditions and requirements of this Agreement. The renewal shall be on the same terms and conditions as are contained in the Lease other than the commencement and expiration dates of the renewal term and the monthly rent payable by the Settling Tenant dur-

ing said renewal term. Notwithstanding the foregoing, a Settling Tenant who breaches said Settling Tenant's Lease or deemed renewal thereof, or fails to fulfill all obligations under said Lease, or otherwise acts in violation of the Lease or law, code or ordinance, or in violation of the Owner's or other tenant's rights, or in an[y] other manner acts in a legally cognizable objectionable [*sic*] manner, shall be subject to the prosecution by Owner of all rights and remedies provided under law and/or equity, including, but not limited to rescission of lease and/or recovery of possession of the violating Settling Tenant's apartment. . . ."

The requirement that a Settling Tenant use his or her apartment as a "primary residence" is set forth in paragraph 19 of the Settlement Agreement, which provides: "19. In order to retain the benefits of this Agreement, a Settling Tenant must maintain his/her/their apartment as a primary residence and the failure to so maintain the apartment in said manner shall be a breach of this Agreement, such that the Owner may seek, at such time as Owner deems appropriate, a legal remedy in a court of competent jurisdiction, including, but not limited to, rescission of the future benefits under the Agreement to said Tenant, and/or recovery of possession of said Tenant's apartment. The criteria and evidentiary burdens normally used in rent stabilized contests as of the date of this Agreement pertaining to primary residence shall apply."

In August 2001, defendant Mary Smith, the tenant of record of an apartment at 30 Waterside Plaza, executed a "Tenant Acceptance Agreement," by which she agreed to be bound by the Settlement Agreement. Thereafter, pursuant to the Settlement Agreement, landlord and Smith entered into a new lease of Smith's apartment, with a one-year term beginning on November 1, 2001. The lease provided that "the terms of the Settlement Agreement are incorporated into and made a part of this Lease."

On or about December 3, 2001, after the term of the November 2001 lease had commenced, landlord filed a summons and complaint in Supreme Court, New York County, commencing this action against Mary Smith and her adult daughter, Alison Smith. The action seeks, among other relief, a declaration that Mary Smith is not using her apartment at 30 Waterside Plaza as a primary residence; rescission of the lease; and recovery of possession of the apartment. Landlord alleges that Mary Smith's primary residence is in Cranston, Rhode Island, where she leases another apartment, and that she has illegally sublet or assigned her apartment in landlord's building to her daughter,

the codefendant. After defendants answered the complaint, the parties engaged in discovery, in which landlord obtained copies of a lease, dated July 27, 2001, for Mary Smith's Rhode Island apartment; Mary Smith's renter's insurance policy for that apartment; and bills for telephone, electricity and cable television service provided to Mary Smith at the Rhode Island apartment.

On October 31, 2002, the first one-year term of Mary Smith's lease for her 30 Waterside Plaza apartment expired. As of that date, this action had not resulted in any judicial declaration terminating the lease. Accordingly, consistent with the automatic renewal provision of paragraph 8 of the Settlement Agreement, landlord sent Smith a bill for rent and additional security, dated November 1, 2002, which reflected the increased rent payable for November 2002 under the terms of the Settlement Agreement. Smith paid the bill by check dated November 1, 2002.

After Mary Smith paid the rent for November 2002, she and her daughter moved for summary judgment dismissing the complaint on the ground that the action had been "rendered moot." It was defendants' theory that the action had become "moot" because landlord had renewed the lease by billing Smith for the increased rent due for the first month of the renewal term and subsequently negotiating Smith's check tendered in payment of that bill. Such renewal of the lease during the pendency of the action, defendants argued, "must be viewed as an acquiescence by [landlord] in Mary Smith's continued tenancy and the continued occupancy of her daughter Alison." In opposition, landlord argued that the renewal of the lease is of no significance to landlord's ability to continue to maintain this action because, under the Settlement Agreement, landlord is "contractually obligated" to renew the lease until this action results in a judicial declaration that the lease is no longer in effect. Landlord contended that nothing in paragraph 8 or paragraph 19 of the Settlement Agreement permits landlord to "unilaterally" terminate a Settling Tenant's lease, or choose not to renew it, based on landlord's own determination that the tenant is not using his or her apartment as a primary residence.

The motion court issued a decision granting defendants' summary judgment motion on the ground that landlord's "renewal of the lease subsequent to the commencement of this action is inconsistent with its intention to evict defendants on account of Smith's alleged failure to occupy the subject apartment as her primary residence." The court took the view that, "by renewing the lease [landlord] effectively revived the landlord-tenant relationship that it seeks to declare void," and "estopped [itself]

from proving [Smith's] alleged violation [of the lease] in the present action." As to landlord's claim that it was "contractually obligated to renew the lease pending the determination of this action," the court found that this position was "without merit." The ensuing judgment declared that plaintiff had "waived its right to maintain this action by entering into a one-year renewal lease with Mary Smith on November 1, 2002" and dismissed the action without prejudice.

We reverse. The plain meaning of the relevant portion of the Settlement Agreement is that landlord must seek its remedy for a breach of the primary residence provision in a court of law, and may not unilaterally treat the lease as terminated based on its own belief that such a breach has occurred. Paragraph 19 of the Settlement Agreement specifically provides that a Settling Tenant's failure to maintain the apartment as a primary residence "shall be a breach of this Agreement, *such that the Owner may seek, at such time as the Owner deems appropriate, a legal remedy in a court of competent jurisdiction, including, but not limited to, rescission of the future benefits under the Agreement to said Tenant, and/or recovery of possession of said Tenant's apartment*" (emphasis added). Nothing in paragraph 19 of the Settlement Agreement supports the position of defendants and the motion court that landlord is entitled, based on its own determination that a breach of the primary residence provision has occurred, to serve a Settling Tenant with a notice of termination or eviction, and thereafter to treat the lease as terminated. To the contrary, the contractual language set forth above makes clear that landlord, when faced with an apparent breach of the primary residence provision, is obligated to look to a court for a determination that such a breach has occurred, and, until that issue has been adjudicated, to treat the lease as being in full force and effect.

In finding that landlord was not obligated to renew the lease pending determination of this action, the motion court relied on paragraph 36 of the lease. Paragraph 36 provides in pertinent part that, in the event the tenant continues to occupy the apartment after the lease has been terminated, the tenant "must pay an equal amount [i.e., equal to the rent] for what the law calls 'use and occupancy' until [the tenant] actually move[s] out." By its terms, this "use and occupancy" provision comes into effect only after the lease has been terminated. As previously discussed, this contingency has not yet occurred in this case,

since landlord seeks to have the lease judicially rescinded, as required by paragraph 19 of the Settlement Agreement.*

Since the subject lease must be deemed to remain in effect until a final determination is rendered in this action, the Settlement Agreement's automatic renewal provision (paragraph 8) came into play upon the expiration of the first one-year term of the lease. Accordingly, landlord was contractually obligated to treat the lease as automatically renewed for another one-year term commencing November 1, 2002, thereby maintaining the status quo pending determination of this action—which, it should be noted, is to the tenant's substantial benefit. Thus, landlord's conduct in billing Smith for increased rent for the first month of the renewal term, and in negotiating the check tendered in payment of that bill, was legally required, and, as such, cannot be deemed to have waived the right to seek judicial rescission of the lease based on Smith's alleged material breach thereof (see *General Motors Acceptance Corp. v Clifton-Fine Cent. School Dist.*, 85 NY2d 232, 236 [1995] [waiver is "the *voluntary* and intentional abandonment of a known right" (emphasis added)]; *see also Kibel v Appel*, 147 Misc 2d 141, 142 [Civ Ct, NY County 1990] [landlord's offer of renewal lease to rent-stabilized tenants, as required by Rent Stabilization Code, did not void landlord's previously served notice to terminate lease based on tenants' alleged violation of substantial obligation thereunder, since "the act of renewing the lease was not one of free will but of adhering to the requirements of law"]).

In closing, we note that defendants contend that landlord's "arguments concerning waiver are legally irrelevant" because, in defendants' view, "the gravamen of the [motion court's] decision is that, by renewing the lease, plaintiff revived the tenancy and rendered the action moot." This draws a distinction without a difference. Regardless of the terminology used, the basis of defendants' position remains that landlord's commencement of this action freed it of any obligation to renew the lease, and,

---

* To the extent paragraph 35 of the lease (which has not been discussed either by the parties or by the motion court) gives landlord the option to terminate the lease by giving the tenant written notice of default and an opportunity to cure, this option does not apply where the tenant has defaulted in performing the obligation to occupy the apartment as a primary residence. This is because the primary residence requirement is set forth in paragraph 19 of the Settlement Agreement, which specifies that landlord must seek a judicial remedy in the event of a breach of that provision. Further, paragraph 7 of the Settlement Agreement provides: "In the event that any provisions contained in this Agreement are inconsistent with the provisions contained in the form of Lease annexed hereto, it is the intent of the parties hereto that the provisions contained in this Agreement supersede any inconsistent provisions in said Lease, which is deemed modified hereby."

therefore, its subsequent renewal of the lease was a voluntary act that may be deemed to give rise to adverse legal consequences. For the reasons previously discussed, however, landlord's commencement of this action did not immediately terminate the lease, and, accordingly, landlord was, and continues to be, obligated to renew the lease, and otherwise to abide by the lease's terms, until such time as the action is determined in landlord's favor, should that ever occur. In this regard, we point out that the question that will ultimately determine the outcome of this proceeding—whether Mary Smith has complied with her obligation to maintain the subject apartment as her primary residence—is not presented for decision on this appeal. Concur—Nardelli, J.P., Mazzarelli, Sullivan, Lerner and Friedman, JJ.

